#24331-r-JKM

**2007 SD 80**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DAKTRONICS, INC.,                           Plaintiff and Appellant,

  v.

LBW TECH CO., INC.
and LING TANG,                          Defendants and Appellees.


\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
BROOKINGS COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE DAVID R. GIENAPP
Judge

\* \* \* \*

ROCHELLE R. CUNDY
ROBERTO A. LANGE of
Davenport, Evans, Hurwitz & Smith, LLP      Attorneys for plaintiff
Sioux Falls, South Dakota                    and appellant.

ALAN F. GLOVER
JODY ODEGAARD SMITH of
Glover & Helsper, PC                           Attorneys for defendants
Brookings, South Dakota                    and appellees.

\* \* \* \*

ARGUED ON MAY 22, 2007

OPINION FILED **08/01/07**

#24331

MEIERHENRY, Justice

[¶1.]        Daktronics, Inc. brought suit against LBW Tech Co., Inc. and Ling Tang in South Dakota seeking a declaratory judgment and damages for deceit and negligent misrepresentation.  LBW and Daktronics had entered into a contract wherein LBW would facilitate Daktronics' exploration of business opportunities in China.  Under the contract, LBW attempted to secure contracts between Daktronics and Chinese businesses.  LBW and Tang filed a motion to dismiss pursuant to SDCL 15-6-12(b) for lack of personal jurisdiction, improper venue and/or forum non conveniens.  The circuit court dismissed the action based upon lack of personal jurisdiction.  Daktronics appeals.  Because we conclude that sufficient minimum contacts existed to confer personal jurisdiction over the defendants, we reverse.

[¶2.]        "We review issues regarding a court's jurisdiction as questions of law under the de novo standard of review."  Grajczyk v. Tasca, 2006 SD 55, ¶8, 717 NW2d 624, 627 (citing State ex rel. LeCompte v. Keckler, 2001 SD 68, ¶6, 628 NW2d 749, 752).  We recently discussed the proper standard of review for a motion to dismiss under SDCL 15-6-12(b):

> A motion to dismiss under SDCL 15-6-12(b) tests the legal sufficiency of the pleading, not the facts which support it.  For purposes of the pleading, the court must treat as true all facts properly pled in the complaint and resolve all doubts in favor of the pleader.  "Our standard of review of a trial court's grant or denial of a motion to dismiss is the same as our review of a motion for summary judgment—is the pleader entitled to judgment as a matter of law?"  Thus, all reasonable inferences of fact must be drawn in favor of the non-moving party and we give no deference to the trial court's conclusions of law.

Guthmiller v. Deloitte & Touche, LLP, 2005 SD 77, ¶4, 699 NW2d 493, 496 (quoting Vitek v. Bon Homme County Bd. of Com'rs, 2002 SD 100, ¶7, 650 NW2d 513, 516).

[¶3.]    In this case, the only evidence before the court consisted of documentary evidence, including affidavits and declarations. "We review a district court's determination regarding personal jurisdiction based on written submissions in the light most favorable to the nonmoving party." Stanton v. St. Jude Medical, Inc., 340 F3d 690, 693 (8thCir 2003) (citing Wines v. Lake Havasu Boat Mfg., Inc., 846 F2d 40, 42 (8thCir 1988) (per curiam)). Because the circuit court did not hear testimony or hold a fact-finding hearing, we are required to resolve factual disputes in favor of Daktronics.

[¶4.]    "The inquiry into whether a court may assert personal jurisdiction over a nonresident defendant is two-fold." Denver Truck and Trailer Sales, Inc. v. Design and Bldg. Servs., Inc., 2002 SD 127, ¶9, 653 NW2d 88, 91. The first inquiry is whether the legislature granted the court jurisdiction pursuant to South Dakota's Long Arm Statute, SDCL 15-7-2. Id. The second inquiry is "whether the proposed assertion of jurisdiction comports with federal due process requirements." Id.

[¶5.]    As to the first inquiry, the court determined that it had jurisdiction under the Long Arm Statute. LBW and Tang do not challenge the court's determination. It is the second inquiry of whether jurisdiction comports with due process that is at issue. The due process inquiry requires this Court to decide whether LBW/Tang had sufficient minimum contacts with South Dakota to conclude that the assertion of jurisdiction does not offend "traditional notions of fair play and substantial justice." See Int'l Shoe Co. v. Washington, 326 US 310, 316, 66 SCt 154, 158, 90 LEd 95 (1945) (citations omitted). It is also essential that there be some act of LBW/Tang by which they purposefully availed themselves of the

privilege of conducting activities within South Dakota, thus invoking the benefits and protections of its laws. *See* Burger King Corp. v. Rudzewicz, 471 US 462, 475, 105 SCt 2174, 2183, 85 LEd2d 528 (1985) (quotation omitted). "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . ." *Id.* (quotation omitted). Moreover, LBW/Tang's conduct and connection with South Dakota must be such that they would reasonably anticipate being haled into South Dakota courts. *See* World-Wide Volkswagen Corp. v. Woodson, 444 US 286, 297, 100 SCt 559, 567, 62 LEd2d 490 (1980) (citations omitted).

[¶6.] Construing the United States Supreme Court's precedent regarding federal due process requirements, we have established a three step test to determine whether minimum contacts exist and due process is satisfied. Frankenfeld v. Crompton Corp., 2005 SD 55, ¶17, 697 NW2d 378, 384 (citing Rothluebbers v. Obee, 2003 SD 95, ¶26, 668 NW2d 313, 322). Under this test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state, thus invoking the benefits and protections of its laws. Second, the cause of action must arise from defendant's activities directed at the forum state. Finally, the acts of defendant must have substantial connection with the forum state to make the exercise of jurisdiction over defendant a reasonable one.

*Id.* (citing *Rothluebbers*, 2003 SD 95, ¶26, 668 NW2d at 322; *Denver Truck*, 2002 SD 127, ¶11, 653 NW2d at 91; Opp v. Nieuwsma, 458 NW2d 352, 355-56 (SD 1990)).

[¶7.] We must review the facts under this three step test. Daktronics is a South Dakota corporation with its principal place of business in Brookings, South Dakota. Its business consists of designing, manufacturing and selling display

systems used for athletics, business and transportation. LBW is a Nevada entity with its principal place of business in California. It acts in the capacity of a business consultant and intermediary contact between companies in China and the United States. Tang is the chief executive officer and authorized representative of LBW and a California resident.

[¶8.]     Daktronics and LBW/Tang entered into a consulting agreement. Daktronics signed the agreement in South Dakota and then mailed it to Tang in California. Tang signed the agreement in California and forwarded the fully executed agreement back to South Dakota. The agreement did not contain a choice of law provision or a forum selection clause. The agreement required Tang to perform consulting work in China and Daktronics to provide payment for her services.

[¶9.]     The following contacts between LBW/Tang and South Dakota are not in dispute: (1) Tang telephoned, e-mailed and faxed Daktronics executives in South Dakota; (2) she visited Daktronics' headquarters in South Dakota at the expense of Daktronics;[1] (3) while in South Dakota, Tang and Daktronics discussed a potential business relationship; (4) after her visit, Tang sent e-mails to and telephoned South Dakota; (5) Tang and Daktronics entered into a three-year consulting agreement, partially executed in South Dakota; (6) in accordance with the agreement, Tang sent status reports and reimbursement requests to South Dakota; and (7) Tang

---

1.     The parties dispute who requested that Tang visit Daktronics' headquarters in South Dakota.

received payment for her services and reimbursement for her expenses from South Dakota.

[¶10.] The disputed facts center on who initiated contact between the parties and who solicited whose business. Daktronics submits that LBW/Tang initiated contact and solicited business with Daktronics, and LBW/Tang claim Daktronics initiated contact and solicited business with Tang. However, "[i]t is [ordinarily] not significant that one or the other party initiated the relationship." Gen. Elec. Co. v. Deutz AG, 270 F3d 144, 151 (3rdCir 2001) (citation omitted). Rather, "the intention to establish a common venture extending over a substantial period of time is a more important consideration." *Id*. Furthermore, although LBW/Tang relied heavily on this fact at oral argument,[2] we look at all of the contacts between an out-of-state resident and the forum, not one single factor. *See* Logan Prods., Inc. v. Optibase, Inc., 103 F3d 49, 53 (7thCir 1996) ("the constitutionality of jurisdiction does not turn on which party 'started it.' Rather, pinning down which party initiated the transaction is merely one helpful factor in the jurisdictional equation") (citing Madison Consulting Group v. South Carolina, 752 F2d 1193, 1202 (7thCir 1985)).

[¶11.] With respect to interstate contractual obligations, like the one here, the United States Supreme Court has emphasized that "parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." *Burger King Corp.*, 471 US at 473, 105 SCt at

---

2. LBW and Tang also argued below that who "initiated the initial contact . . . goes to the core of our argument."

2182, 85 LEd2d 528 (quoting Travelers Health Assn. v. Virginia, 339 US 643, 647, 70 SCt 927, 929, 94 LEd 1154 (1950)) (additional citation omitted). The Court stated:

> [W]here the defendant 'deliberately' has engaged in significant activities within a State, or has created 'continuing obligations' between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

*Id*. at 475-76, 105 SCt at 2184, 85 LEd2d 528 (internal quotations omitted).

[¶12.] Here, there is no question that Tang knew she was negotiating with a South Dakota corporation for the creation of a continuing three-year contract with Daktronics and the benefits that would derive from such a relationship. She had an obligation to provide services to a South Dakota corporation, even though such services were performed in China. Furthermore, throughout the duration of the contract, she submitted status reports and reimbursement requests to South Dakota. Thus, she voluntarily accepted the regulation of her business from Daktronics' headquarters in South Dakota.

[¶13.] Moreover, "where individuals 'purposefully derive benefit' from their interstate activities, it may well be unfair to allow them to escape having to account in other States for consequences that arise proximately from such activities; the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Id*. at 473-74, 105 SCt at 2183, 85 LEd2d 528 (quoting Kulko v. California Superior Ct., 436 US 84, 96, 98 SCt 1690, 1699, 56 LEd2d 132 (1978)). As a result of Tang's interstate activities

with Daktronics in South Dakota, Tang received payment for her services and reimbursement for her expenses from South Dakota. Thus, she purposefully derived a benefit from her interstate activities.

[¶14.]    Although *Burger King Corp.* acknowledged that an individual's contract with an out-of-state party alone cannot establish sufficient minimum contacts in the other party's home forum, 471 US at 478, 105 SCt at 2185, 85 LEd2d 528, the Court also recognized that "even a single act can support jurisdiction" if it "creates a 'substantial connection' with the forum." *Id*. at 475 n18, 105 SCt at 2184 n18, 85 LEd2d 528 (quotation omitted). The facts as submitted to the trial court showed that Tang had more contacts with Daktronics in South Dakota than just the single act of establishing a contract. *See supra* ¶9. In fact, the nature and subject matter of the contract created a substantial connection to Daktronics' headquarters in South Dakota. Provisions of the three-year contract contemplated continuous contacts between Tang and Daktronics in South Dakota. Additionally, the contract's objective was that her successful performance of the contract would have a lasting impact on Daktronics' South Dakota office because her performance would elicit future business and income for Daktronics' headquarters.

[¶15.]    LBW and Tang claim the contacts in this case are more attenuated than the contacts in *Denver Truck* where this Court dismissed an action based on lack of personal jurisdiction. However, this argument is misplaced. In *Denver Truck*, none of the substantive negotiations took place in South Dakota, and the out-of-state corporation had only three contacts with South Dakota—one letter and two phone calls. 2002 SD 127, ¶¶13-14, 653 NW2d at 92. Furthermore, the

contract was wholly executed outside of South Dakota, and the out-of-state defendant had no notice that it was receiving compensation from a South Dakota corporation. *Id*. ¶¶16-17. These facts differ substantially from those presented here. Unlike *Denver Truck*, the substantive negotiations did take place at Daktronics' headquarters in South Dakota and through numerous communications with Daktronics' representatives in South Dakota via both telephone and e-mail. Also, Tang knew she was entering into an ongoing relationship with a South Dakota corporation and assuming obligations that would directly affect the corporation.

[¶16.] For the foregoing reasons, we conclude that sufficient minimum contacts do exist, and Tang purposefully availed herself of the privilege of acting in South Dakota. Next, we must determine whether the cause of action arose from Tang's activities directed at South Dakota and whether Tang's acts have a substantial connection with South Dakota so as to make the exercise of jurisdiction reasonable. In this case, the causes of action—deceit, misrepresentation and declaration of amounts due under the contract—arise out of the contract between LBW and Daktronics. The contract was negotiated and partially executed in South Dakota and was the culmination of Tang's e-mails and phone calls to South Dakota. Thus, the second prong of the test for due process is satisfied.

[¶17.] LBW and Tang argue that the third prong of the due process analysis, reasonableness, is not met in this case. When considering whether the assertion of jurisdiction is reasonable, this Court must consider "'the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief' and the interest of other states in securing the most efficient resolution of

controversies." *Denver Truck*, 2002 SD 127, ¶19, 653 NW2d at 93 (quotation omitted). To support their argument, LBW and Tang submit that it is more burdensome for them to litigate in South Dakota. However, the United States Supreme Court addressed this concern when it stated:

> [B]ecause "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity," it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity.

*Burger King Corp.*, 471 US at 474, 105 SCt at 2183, 85 LEd2d 528 (quoting McGee v. Int'l Life Ins. Co., 355 US 220, 223, 78 SCt 199, 201, 2 LEd2d 223 (1957)). LBW and Tang also argue that most of the parties involved in this matter reside in California or China. However, Daktronics' headquarters and executives are located in South Dakota, and South Dakota has an interest in resolving contractual disputes that have a significant impact on a South Dakota corporation. Therefore, the third prong of the test is also satisfied.

[¶18.] Considering only the undisputed facts, we conclude that Daktronics adequately fulfilled the three step test for due process. LBW/Tang had sufficient minimum contacts with South Dakota and purposefully availed themselves of its laws; the causes of action arise out of those contacts; and the contacts create a substantial connection with South Dakota so that assertion of jurisdiction is not unreasonable. For these reasons, we reverse the trial court's dismissal of the action based on lack of personal jurisdiction.

[¶19.] Reversed.

#24331

[¶20.]     GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and

ZINTER, Justices, concur.